# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNCORK AND CREATE LLC,

          Plaintiff,

v.                                                   CIVIL ACTION NO.   2:20-cv-00401

THE CINCINNATI INSURANCE
COMPANY, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendants' *Motion to Dismiss Plaintiff's Complaint* (Document 12), the *Memorandum of Law in Support of Defendants' Motion to Dismiss* (Document 13), the *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint* (Document 18), and the *Reply Memorandum in Support of the Cincinnati Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint* (Document 22), as well as all attached exhibits. In addition, the Court has reviewed the *Class Action Complaint* (Document 1), the *Notice of Supplemental Authorities in Support of the Cincinnati Insurance Company, the Cincinnati Casualty Company and the Cincinnati Indemnity Company's Motion to Dismiss and Its Reply to Plaintiff's Response to Motion to Dismiss* (Document 29), and the *Plaintiff's Notice of Supplemental Authority* (Document 31). For the reasons stated herein, the Court finds that the Defendants' motion should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Uncork and Create LLC, initiated this purported class action against the Defendants, the Cincinnati Insurance Company, the Cincinnati Casualty Company, and the Cincinnati Indemnity Company (collectively, Cincinnati), on June 12, 2020. The Plaintiff is a creative events company with locations in Barboursville and Charleston, West Virginia.

The Plaintiff had an "all-risk" commercial property coverage insurance policy from Cincinnati with a policy effective date of December 7, 2017 to December 7, 2020, which was in effect at all relevant times. The Policy provides coverage, with specified exclusions, for a "loss," defined as "accidental physical loss or accidental physical damage." (Policy at Section G.8, p. 38, attached as Exhibit 1 to the Plaintiff's complaint) (Document 1-1). In the event of a covered loss, the Policy includes coverage for loss of business income during a suspension of operations, including such a suspension sustained due to a civil authority prohibiting access to the premises.[1]

On March 16, 2020, the Governor of West Virginia declared a state of emergency related to the novel coronavirus, or COVID-19, pandemic. On March 23, 2020, the Governor issued an Executive Order requiring all non-essential businesses to cease all activities beyond minimum basic operations to maintain inventory, process payroll, etc., effective at 8:00 p.m., on March 24, 2020. Uncork and Create was among the non-essential businesses shut down as a result of the Governor's order. The Charleston location re-opened on June 11, 2020, but the Barboursville location was permanently closed on April 24, 2020. The Plaintiff incurred and continues to incur a loss of business income and other additional expenses.

---

1 The Policy provides as follows: "We will pay for the actual loss of 'Business Income' and 'Rental Value' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by a direct 'loss' to property at a 'premises' caused by or resulting from any Covered Cause of Loss." (Policy at Section E.b(1) at p. 13).

2

The Plaintiff timely notified Cincinnati of its claim based on the interruption to its business. Cincinnati responded with a denial letter dated May 14, 2020, stating that the claim did not involve a direct physical loss at the Plaintiff's premises, and additionally asserting that a "Pollution Exclusion" was applicable. The Plaintiff contends that the Governor's order requiring the business to close constitutes a covered cause of loss under the Policy, and/or that the virus itself causes direct physical loss or damage and is thus a covered cause of loss.

The Plaintiff asserts causes of action for declaratory judgment under 28 U.S.C. §2201, declaratory judgment under W.Va. Code § 55-3-1 *et. seq.*, and breach of contract. It seeks "a declaration that there is coverage under the Policy for the interruption to Plaintiff's business and the associated business income lost therefrom," damages, costs, attorney's fees, and interest, and any other relief deemed proper. (Compl. at p. 15–16.)

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be

a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendants move to dismiss, asserting that the factual allegations do not establish that the Plaintiff is entitled to relief. They argue that physical loss or physical damage to the covered property is a prerequisite to coverage, and closure of a business due to the threat posed by a virus does not constitute physical loss or damage. They point out that COVID-19 harms people, not property. It contends that the virus and related closures caused only financial losses to the Plaintiff, without physically altering the premises. To the extent the Plaintiff claims that the coronavirus was actually physically present at its premises, the Defendant argues that it can be removed by cleaning. The Defendants urge the Court to consider several recent court decisions reaching the conclusion that the coronavirus does not cause physical loss or physical damage for purposes of insurance coverage.

The Plaintiff responds that West Virginia courts do not require "structural alteration of covered property" as a necessary element to finding a "direct physical loss" for insurance coverage. (Pl.'s Resp. at 1.) It argues that losses not specifically excluded should be covered by an all-risks commercial property insurance policy. It notes that the Policy does not include a virus exclusion developed by insurers following the SARS pandemic in the early 2000s. The Plaintiff emphasizes that the closure order, and/or the virus itself, deprived it from using the property for its intended purpose. It cites cases that it contends stand for the proposition that a property that is unsafe to inhabit has physical loss or damage, even absent structural alteration.

Under West Virginia law, the scope of coverage provided by an insurance contract, absent factual disputes, is a question of law. Syl. Pt. 1, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 745 S.E.2d 508, 511 (W. Va. 2013) (quoting Syl. Pt. 1, *Tennant v. Smallwood,* 568 S.E.2d 10 (W. Va. 2002)). "Language in an insurance policy should be given its plain, ordinary meaning." *Id.* at Syl. Pt. 8 (quoting Syl. Pt. 1, *Soliva v. Shand, Morahan and Co., Inc.*, 345 S.E.2d 33 (1988)). Clear and unambiguous provisions "are not subject to judicial construction or interpretation." *Id.* at Syl. Pt. 9. "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." *Id.* at Syl. Pt. 11 (quoting Syl. Pt. 5, *National Mutual Insurance Co. v. McMahon and Sons, Inc.,* 356 S.E.2d 488 (W. Va. 1987)). Further, "ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 3, *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 3 (W.Va. 1998) (quoting Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 356 S.E.2d 488 (W.Va. 1987)).

As both parties recognize, this motion turns on whether COVID-19 and the Governor's closure order constitute "physical loss or physical damage" under the terms of the Policy. The Plaintiff cites a case in which the West Virginia Supreme Court considered whether homes rendered too dangerous for habitation by a rockfall and imminent risk of additional rockfalls had suffered "physical loss" covered by an insurance policy. *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998). The rockfall impacted multiple neighboring homes, including a home that had no direct damage but was exposed to likely future rockfalls, requiring evacuation and utility shut-offs. *Id.* at 5. The court considered similar cases from other jurisdictions and concluded that direct physical loss "may exist in the absence of structural damage to the insured

6

property," given that the homes all "became unsafe for habitation, and therefore suffered real damage when it became clear that rocks and boulders could come crashing down at any time." *Id.* at 17.

The Plaintiff argues that *Murray* is comparable to the situation presented here, and that no physical alteration to the premises is required for coverage under a policy requiring physical damage or physical loss. However, the homes were rendered uninhabitable by a physical threat: an unstable retaining wall loomed over the home, and experts anticipated further rockfalls likely to physically damage the home and harm inhabitants. The novel coronavirus has no effect on the physical premises of a business. Non-essential businesses were ordered to shut down to prevent people from exposing one another. In a recent case not involving COVID-19, Judge Johnston explained that "economic losses, such as loss of income and benefits" do not constitute property damage or physical injury to property. *Cooper v. Westfield Ins. Co.*, No. 2:19-CV-00324, 2020 WL 5647015, at *5 (S.D.W. Va. Sept. 22, 2020) (Johnston, C.J.). Recovery for the Plaintiff here would be purely economic, solely for lost business without any accompanying repairs to the premises. Thus, the Court does not find that *Murray* directs coverage under the circumstances presented herein.

Several courts have considered similar insurance coverage disputes related to the COVID-19 pandemic, although there are no precedential decisions in the Fourth Circuit or from the West Virginia Supreme Court. A Missouri federal district court, relied upon by the Plaintiffs, found that a "direct physical loss" was adequately alleged where the plaintiff alleged that COVID-19 was a physical substance that lives on physical surfaces and in the air, and rendered their property unsafe and unusable. *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL

7

4692385, at *4 (W.D. Mo. Aug. 12, 2020). The court concluded that the plaintiffs had "plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *Id.* at *6.

The majority of courts to address the issue, however, have found that COVID-19 and governmental orders closing businesses to slow the spread of the virus do not cause physical damage or physical loss to insured property. A federal district court in Florida distinguished *Studio 417* based on the allegations in that case that the virus was physically present on the premises, and further reasoned that actual, physical, or tangible alteration to a property was required, not "merely…economic losses." *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *8 (S.D. Fla. Aug. 26, 2020) (also detailing the context provided by other provisions similar to those in the instant Policy, allowing for business interruption losses during a period of repair and restoration, that clarify that physical damages requiring repair are necessary). The federal District Court for the Eastern District of Texas likewise found a demonstrable physical alteration to the property necessary to establish a physical loss. *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (also finding that a virus exclusion would preclude coverage). The federal District Court for the Northern District of California reasoned that, although dispossession may sometimes constitute a "loss" without physical alteration of the property, California's Stay at Home orders temporarily prohibiting the plaintiff business from operating did not constitute the type of permanent or unrecoverable loss necessary for coverage. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020). The court also noted surrounding provisions concerning restoration, repair, and replacement of the

property that bolstered its finding that coverage is inapplicable to COVID-19 and the Stay at Home orders. *Id.* An opinion from the Northern District of Illinois provides a helpful summation: "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020).

The Court finds those decisions concluding that COVID-19 does not cause a direct physical damage or loss to property to be more persuasive. Although some courts have drawn a distinction based on whether a complaint alleged presence of the virus on the premises, the Court does not find such an allegation determinative. *See, e.g.*, *Seifert v. IMT Ins. Co.*, No. CV 20-1102 (JRT/DTS), 2020 WL 6120002, at *3 (D. Minn. Oct. 16, 2020) (dismissing because plaintiff failed to allege physical infiltration and contamination of the virus on the properties). Firstly, while factual allegations drive the analysis of a motion to dismiss, courts are not required to set aside common sense, and neither *Studio 417*, which relied in part on the allegation of presence of the virus, nor the instant case, involve actual allegations of employees or patrons with infections traced to the business. There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus. Secondly, even when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care,

eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk. *See, e.g.*, *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) (an Executive Order that prompted closure of restaurant dining room "merely recognized an existing threat" and "did not represent an external event that changed the insured property"). Property, including the physical location of Uncork and Create, is not physically damaged or rendered unusable or uninhabitable. If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to Uncork and Create's operation. No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage. Therefore, the motion to dismiss must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendants' *Motion to Dismiss Plaintiff's Complaint* (Document 12) be **GRANTED** and that this

matter be **DISMISSED** from the Court's docket. The Court further **ORDERS** that any pending motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: November 2, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA