```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

| | |
|---|---|
| **T & E CHICAGO LLC,** individually, and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 20 C 4001 |
| v. | Judge Harry D. Leinenweber |
| **THE CINCINNATI INSURANCE COMPANY,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court grants Defendant's Motion to Dismiss Plaintiff's Complaint. (Dkt. No. 11.)

### I. BACKGROUND

Plaintiff T & E Chicago, LLC is the owner-operator of a tavern located in the Logan Square neighborhood of Chicago, Illinois. (Compl. ¶ 1, Dkt. No. 1.) On March 15, 2020, due to the COVID-19 global pandemic, Illinois Governor J. B. Pritzker issued an order closing all "non-essential businesses" to the public. (*Id.* ¶ 10.) This order has been extended several times. (*Id.*) As a result of these closure orders, Plaintiff, a non-essential business, was forced to close and lost substantial revenue. (*Id.* ¶ 11.)

On or about July 20, 2019, Plaintiff obtained "business interruption insurance" from Defendant and paid the required

premium. (*Id.* ¶¶ 13 & 15, *see also* Policy, Compl., Ex. A, Dkt. No. 1-1.) The coverage extended one year, until July 20, 2020. (Compl. ¶ 13.) Plaintiff alleges the business interruption insurance was part of an "all risks" policy, providing coverage for any risk except those that are specifically excluded. (*Id.* ¶ 15.) As a result of its business interruption and the resulting loss of income caused by the COVID-19 closure orders, Plaintiff filed a claim with Defendant. (*See id.* ¶ 16.)

After receiving Plaintiff's claim, Defendant issued a blanket denial for any losses resulting from the COVID-19 pandemic and the Governor's closure orders. (*Id.*) Its denial letter asserted that Plaintiff's losses were not covered because the reason preventing Plaintiff from operating its business did not result from "direct physical damage" or "direct physical loss" to Plaintiff's property. (*Id.* ¶ 17; *see also* 4/15/20 Letter, Compl., Ex. B, Dkt. No. 1-2.)

"All risks" policies differ from policies that cover only specified risks, like hurricanes or earthquakes. (Compl. ¶¶ 65-66.) Despite referring to its policy as an "all risks" policy, Plaintiff acknowledges that the policy does not actually cover "all risks." (*Id.* ¶ 67.) Indeed, the policy provides for specific exclusions. (*Id.*) Thus, if an exclusion does not apply the risk is

covered and if an exclusion applies then the risk is not covered.

(*Id.*)

The specific provisions involved are:

**SECTION A. COVERAGE.**

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.
\* \* \*

**(1) Business Income**
We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

\* \* \*
**(2) Extra Expense**
**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2) (b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.
**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:
    **1)** Avoid or minimize the "suspension" of business and to continue "operations" either:
        **a)** At the "premises"; or
        **b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

>    **2)** Minimize the "suspension" of business if you cannot continue "operations".
> **(c)** We will also pay expenses to:
>    **1)** Repair or replace property; or
>    **2)** Research, replace or restore the lost information on damaged "valuable papers and records";
> but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.
>
> **(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

(Policy at 31 & 46–47.) The Illinois Business Income endorsement also provides additional separate Business Income and Extra Expense coverage grants, utilizing the same language. (*See id.* at 91–99.)

The policy's definitions section defines the term loss as "accidental physical loss or accidental physical damage." (*Id.* at 66.) The policy also contains a provision covering loss caused by civil authority as follows:

> When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>
> **(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

>**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
>This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.
>
>This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:
>**1)** 30 consecutive days after the time of that action; or
>**2)** When your "Business Income" coverage ends;
>whichever is later.

(*Id.* at 47.) Further, the Illinois Business Income endorsement provides additional, separate civil authority coverage as follows:

>**b. Civil Authority**
>When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:
>     **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
>     **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
>Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises"

>and will apply for a period of up to 30 consecutive days from the date on which such coverage began.
>
>Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

(*Id.* at 92.)

After Defendant's denial letter, Plaintiff filed a four-count putative class action complaint. Count One seeks a declaratory judgment, Count Two alleges breach of contract, Count Three alleges breach of the duty of good faith and fair dealing, and Count Four alleges bad faith denial of insurance under Illinois state law. Defendant now moves to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6).

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will accept all well-pleaded factual allegations as true and construes all reasonable inferences in the

plaintiff's favor. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001) (citations omitted).

### III. DISCUSSION

The parties agree that in this diversity case the choice of law favors Illinois. *See Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 844–45 (Ill. 1995). The proper construction of the policy is a question of law and the primary objective is to ascertain and give effect to the intentions of the parties as expressed in the policy. *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997). If a policy term is susceptible to more than one reasonable interpretation, it is ambiguous and will be construed in favor of the insured. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). However, a policy provision is not ambiguous solely because the parties disagree about its interpretation. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010).

On this motion, Defendant argues the Court should dismiss the Complaint because the Plaintiff has not alleged a direct physical loss or damage to property. Defendant contends the policy

indemnifies against loss or damage to *property* while an infectious disease like COVID-19 damages *people*. The Business Income, Extra Expense, and Civil Authority coverages likewise apply only to income losses tied to physical loss or damage to property and not losses incurred to protect the public from disease. Thus, without direct physical loss or damage to property, Defendant argues that coverage is not available.

Plaintiff responds, arguing that the policy covers both physical loss and physical damage, which Defendant incorrectly treats as synonymous. The policy does not define either term, and to equate the two would render one or the other superfluous. *See* 11 Williston on Contracts § 32:5 (4th ed.) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").

Next, Plaintiff argues that an average person would interpret the phrase "accidental physical loss" to include a sudden inability by the insured to use the property that was previously useable. Plaintiff claims that it is entitled to coverage under the Civil Authority provision for the same reason: it has lost the physical use of its property. Plaintiff also points out that Defendant did not avail itself of an "Exclusion for Loss Due to Virus or Bacteria" endorsement developed in 2006 by the Insurance Services

Office, a nonprofit corporation composed of insurance companies. (Resp. at 9, Dkt. No. 19 (citing ISO Form CP 01 40 07 06).) Finally, Plaintiff argues that, at worst, the policy provision is ambiguous and must be construed in favor of the insured, thus providing coverage.

In reply the Defendant points out that the policy clearly applies only to situations where there is "direct physical loss or damage to property" and not to "purely financial losses." (Reply at 2, Dkt. No. 20.) Additionally, there are a multitude of cases, including two from Illinois, that have since been decided to interpret policy provisions like these as not providing coverage for COVID-19-related losses.

Defendant is correct—this issue has been the subject of numerous decisions issued by various state and federal courts in the United States, including Illinois. As Defendant points out, most of these decisions, including the two from Illinois, have found for the insurance companies. These decisions found no coverage for business closures resulting from civil authority closure orders. For example, a case in this District—*Sandy Point Dental, PC v. Cincinnati Insurance Company*, 20CV2160, 2020 WL 5630465 (N.D. Ill. Sept 21, 2020)—was decided in favor of the defendant insurance carrier. Plaintiff acknowledges this decision, but argues that it was "wrongfully decided." (Resp. at 19.)

Similarly, in a recent Illinois state court decision, the court interpreted the language "loss to" to require a physical loss to the property itself, not including the loss of use of the property to the insured. *It's Nice, Inc. v. State Farm Fire and Cas. Co.*, No. 2020L000547 (Ill. Cir. Ct. Sept. 29, 2010).

There are other cases deciding against coverage for losses resulting from closure orders under similar policy provisions. *See, e.g.*, *Diesel Barbershop, LLC, et al. v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Gavrilides Mgmt. Co. v. Mich. Ins Co.*, No 20-258-CB, 2020 WL 4561979 (Mich. Cir. Ct. July 21, 2020); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B., 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, l:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020); *UnCork and Create LLC v. Cincinnati Ins. Co.*, 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov 2, 2020); *Raymond H. Nahmad, DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020). True, there have been decisions to the contrary, including those cited by Plaintiff. *See, e.g.*, *North State Deli, LLC v. Cincinnati Ins. Co.*, No. 20-CVS-02569, 2020 WL 6281507 (N.C. Super. Ct. Oct. 9, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo., Aug 12, 2020). The Court notes though that the Central District of

California explicitly declined to follow *Studio 417* in *West Coast Hotel Mgmt., LLC v Berkshire Hathaway Guard Ins. Co.*, 2:20-cv-05663-VAP-DFMx, 2020 WL 6440037, at *4 n.4 (C.D. Cal. Oct. 27, 2020), and interpreted the insurance policy at issue in favor of the insurance company.

The Court sympathizes with Plaintiff. Nevertheless, the policy's phrasing requires the Court to find in Defendant's favor. The Court agrees with the courts that have found that loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property. The policy's use of "loss to" versus "loss of" phrasing supports this conclusion. (*See* Policy at 46 (covering "direct 'loss' to property").) In addition, the provision of coverage for a "period of restoration," see *id.*, clearly implies a requirement of loss to property rather than loss of property. Defendant's interpretation is the correct one.

There being no coverage under the policy, the Court must dismiss Count One. Because the remaining counts, Counts Two, Three, and Four, rely on an interpretation of Defendant's policy that the Court cannot accept, the Court also dismisses Counts Two, Three and Four.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss Plaintiff's Complaint. (Dkt. No. 11.)

**IT IS SO ORDERED.**

---

Harry D. Leinenweber, Judge
United States District Court

Dated: 11/19/2020